HEARD APRIL TERM, 1876.

## MOORE vs. JOHNSON.

Judgment of Circuit Court, report of Referee and order of reference set aside on the ground that the report did not conform to the rules in relation to the manner in which the facts found by the Referee, and his conclusions of law, should be stated, and the cause remanded for trial by jury.

The facts referred to in Section 296 of the Code, requiring the facts found and the conclusions of law to be stated separately, are the conclusions of fact drawn from the testimony.

A clear statement of all material facts proved, or properly inferable from the proofs, should be stated first, and then should follow the conclusions according to the judgment of the Referee.

BEFORE TOWNSEND, J., AT CHESTERFIELD, SEPTEMBER TERM, 1874.

This was a creditor's bill for settlement of the estate of Allen McFarlan, deceased, of whose will W. D. Johnson and others were executors.

The case is as follows:

This was an action in the Court of Common Pleas for the County of Chesterfield, instituted by the executors of the last will and testament of Allan McFarlan, deceased, against his heirs at law and creditors, to marshal the assets of his insolvent estate. The usual order enjoining creditors and calling upon them to establish their claims before the Court was issued and published, and John C. Evans, of Cheraw, was appointed Referee, before whom the claims of creditors should be established. On the          day of                a reference for this purpose was held by him at Cheraw, and among the claims against the estate of the late Col. Allan McFarlan offered for proof was one held by Henry T. Moore, Esq., as executor of the last will and testament of his deceased mother, Margaret Moore. This was a bond, bearing date February 25, 1864, in the penal sum of $18,463, conditioned for the payment of $9,231.50, in two equal annual intalments, with interest from date, payable annually, until paid. The bond was given for the purchase money of real estate and a wagon, and was secured by a mortgage on the property sold. When presented for proof its execution was admitted by the counsel for McFarlan's estate, and the only payment endorsed on it was one of $500, January 31, 1867, which Moore acknowledged to have received, without prejudice to

any claim McFarlan might set up to have the bond scaled. There was no other payment claimed to have been made. Mr. Moore then offered to adduce testimony to shew to the Referee the real value and actual consideration of the bond, to which proof the counsel for the estate of McFarlan objected. The testimony, however, was taken by the Referee, subject to objection, and was as follows:

Thomas E. Powe, examined:

I am acquainted with the land purchased by McFarlan from the estate of Moore. Value before the war, on the terms of sale, one-third cash, balance on credit, $10 to $12 an acre; at the present time, on the same terms, it would bring from $10 down to $8. It lies prettily. The railroad and public road run through it; that and public road rather injure it. Colonel McFarlan joins on the Northwest. Less valuable when taken as a separate tract; as a separate tract less valuable. I know it should have brought $8, any way. There are 434 acres four miles from town, all well timbered; no open land.

H. T. Moore, sworn. [All this class of testimony in relation to land valuation objected to.]

The consideration of the bond in addition to the land was a two-horse wagon, which said wagon brought $110. The land was the next purchase, and was bid off at $19.75 per acre; twelve of the town lots were bid off at $210 each, and twelve at $220 each. The condition of the sale was: All sums over $500, one-third cash, balance one and two years. Purchasers had the choice to put the whole amount in bond. At the sale I was requested by parties to take the whole in Confederate money, as well as the one-third cash. I would see what the property would bring. I refused to take Confederate money beyond the cash payment. Two or three parties bought property, and I refused to take Confederate money for the whole. Mr. Lynch asked me at the sale whether I would take Confederate money when the instalments fell due. I would not agree to it; I would not be under any obligation to take it; if it was good I would take it; I would not promise to take it. Colonel

McFarlan was present at the sale, but do not know that he heard the conversation; this conversation occurred while the sale was going on; one purchaser, Frank Ellerbe, purchased beyond the cash amount, and I afterwards agreed to take Confederate money by his paying me fifty per cent. on his bid, as I thought I could use it; I value the wagon at $50; as to the value of the lots, I sold in 1855 three lots adjoining the lots in question at $118.85 on four months' time; the lots I sold had no improvements; the little grove made them more desirable for building purposes.

E. Brown:

I would value the Moore lots before the war, on credit, one-third cash and one and two years' time, at $75 per lot average.

The foregoing testimony was offered by the creditor in establishing his claim, which, with the acknowledged execution of the bond and mortgage, was all the testimony adduced. The counsel for the executors of McFarlan offered no testimony. The Referee thereupon made the following report upon this claim and filed the same May 1, 1872.

"Among the claims presented is one in favor of Henry T. Moore, as executor of Margaret Moore, secured by a bond and mortgage of certain real estate, as mentioned in the complaint, dated 25th February, 1864, for the sum of $9,231.50, with a credit of $500, endorsed 31st January, 1867.

"The only contest in regard to this claim was in regard to the manner in which the same should be scaled. On the part of the executors, it was contended that the bond should be scaled according to the table fixed by the Act of 1869, commonly called Corbin's Act, while on the part of the creditors it was contended that the bond, if scaled at all, should only be scaled according to the ordinance of the Convention of 1865. The Referee feels bound by the express terms of the law to scale this claim according to the Act. The contract was made during the period contemplated by the said Act, and, from the testimony adduced, it would seem that the contract was made with reference to Confederate Treasury notes as a basis of value; and, if so, then the law is positive and

requires that the bond in question should be scaled according to the table fixed by the Act. The Referee is fully impressed with the fact that this decision, which he has felt compelled by the arbitrary terms of the law to make, will work very great, in fact the grossest, injustice to the creditor, and he will be glad if the Court can see that he has erred in subject. If the claim can be scaled according to the principle fixed by the ordinance of the Convention of 1865 instead of the table fixed by the Act, then, according to the testimony adduced, the amount of said claim should be $9,280.18 instead of $342.68."

To this judgment of the Referee, the creditor, Henry T. Moore, excepted as follows, viz.:

The defendants (the executors of Allan McFarlan) will please take notice that Henry T. Moore excepts to the ruling of the Referee on the claim presented by him as executor, and his finding thereon, for the following reasons:

1. That the burden of proof was on the defendants to show that the claim was contracted "in Confederate States notes, or with reference to Confederate States notes as a basis of value," which was not required on the reference.

2. That if the Act approved the 29th of March, 1869, is the rule by which to determine the character of the contract, the testimony offered established the fact that said claim was not made "in Confederate States notes, or with reference to said notes as a basis of value."

3. That the testimony offered by the plaintiff (the creditor) was sufficient to establish that said claim was not made "in Confederate States notes, or with reference to said notes as a basis of value."

4. That the testimony showed, if said claim is subject to be scaled at all, it is subject to the operation of the ordinance of 1865, and not to the operation of said Act.

5. That the application of said Act to this claim impairs the obligation of the contract.

6. That the ruling and finding of the Referee is contrary to law, unjust and inequitable.

His Honor the presiding Judge made a decree confirming the report of the Referee so far as it relates to the claim of Henry T. Moore and ordering said report to stand as the judgment of the Court.

Henry T. Moore appealed on the following grounds:

1. Because the creditor's exceptions to the Referee's report are well taken, and, for reasons embodied in said exceptions, the findings of the Referee should have been overruled by the Circuit Judge and his judgment reversed. The said exceptions should have been sustained by the Court and judgment given for the creditor, Henry T. Moore, for the amount of his claim unscaled, and it was error in the Circuit Judge to overrule the exceptions and to sustain the Referee.

2. Because by all the rules of law and evidence the creditor, Henry T. Moore, established his claim before the Referee for the full amount due, and the executors of McFarlan introduced no testimony to controvert this proof, or to show affirmatively that the said claim is subject to the operation of any scaling Act. Wherefore, the judgment of the Court, as well as the finding of the Referee, is unsustained by the testimony, is against the evidence, and contrary to the law of the case.

*Hudson,* for appellant.

*Prince,* contra.

May 18, 1876. The opinion of the Court was delivered by

WILLARD, A. J. Where an issue of fact involving a question of intention to be drawn inferentially from the circumstances attending a transaction is tried by the Court or a Referee, the full benefit of a review of such decision of fact cannot be had in this Court if the matter decided is doubtful or disputable. In that case we recognize that the means and opportunities of the Court of original jurisdiction, having the parties and their witnesses before it, are superior to those afforded to this Court for determining such questions, and we accordingly defer to it. It follows that the rule governing the trial of issues before a jury, namely, that the parties are entitled to have the inquiry into the facts of the case made under a correct understanding of the law applicable to these facts, is to some extent applicable to issues tried before a Court or a Referee.

If it appears, as is reasonably to be inferred, that a misapprehension of the law has affected prejudicially the inquiry into the state of facts, it may become impossible to correct the error in all its effects and consequences without setting aside the conclusions of fact affected by it and sending back the issues of fact for further consideration in the Circuit Court.

In the present case we are compelled to conclude, from the language of the Referee's report, that he regarded the Act for converting values in Confederate currency into lawful money as establishing to some extent the right to have such a reduction made in the case. It is by no means clear what was his view of the effect of the law. We are strongly impressed with the conclusion that he placed the right of the parties too much upon the terms of the statute and did not attach sufficient importance to the pure question of intention, the real issue before him. Instead of finding as matter of fact an intention to deal together with reference to Confederate currency, and embodying this finding in language showing that the true bearing and importance of that issue was fully understood, his report disposes of the question of fact in terms that lead us to conclude that he regarded that issue as subordinate to the question of the right to have this debt scaled under the terms of the Act.

The report says: " The Referee feels bound by the express terms of the law to scale this claim according to the Act. The contract was made during the period contemplated by the said Act, and, from the testimony adduced, it would seem that the contract was made with reference to Confederate Treasury notes as a basis of value; and, if so, then the law is positive and requires that the bond in question should be scaled according to the table fixed by the Act. The Referee is fully impressed with the fact that this decision, which he has felt compelled by the arbitrary terms of the law to make, will work very great, in fact the grossest, injustice to the creditor."

We have so fully stated our views on the law in *Neely* vs. *McFadden*, (2 S. C., 169,) *McKeegan* vs. *McSweeny*, (*ibid*, 191,) *Harman* vs. *Wallace*, (2 S. C., 208,) and *Parker* vs. *Wilson*, (3 S. C., 296,) that no further explanation of them is required. It is plain that the idea of the effect of this statute entertained by the Referee differed materially from that prescribed in the cases above named. The expression "it would seem " does not meet the requirements of the law regarded as a finding of fact. It does not express

a judgment, but a speculative opinion. It is open to the inference that the question of fact did not receive full and separate judicial consideration.

The Code (Sec. 296) relating to trials before the Court or Referees, requires that "they must state the facts found, and the conclusions of law separately." The facts here referred to are the conclusions of fact drawn from the testimony. The facts should be stated briefly, distinctly, and independently of any view taken of the law of the case. If this is strictly followed, the Court, should it differ in point of law from the Circuit Court in any case, will be enabled to apply its views of the case intelligently. A discussion of the merits of the case according to the view of the Court or Referee, in which the facts are grouped and arranged to support the views entertained by the law of the case, is not a compliance with this requirement. A clear statement of all material facts proved or properly inferable from the proofs should be stated first, and then should follow the conclusions, according to the judgment, of the Court. The finding in the present case is not of the character required, and the failure to treat the conclusions of fact and law separately and independently prevents this Court from correcting the error of law without disturbing the findings of fact.

We think that the question of the intention as to the kind of currency with reference to which they were acting should be tried by a jury.

The judgment, report and order of reference must be set aside, and the cause remanded for an order settling such issue, and for the trial thereof by a jury, and for such proceedings thereupon as to the Court may seem proper.

*Moses*, C. J., and *Wright*, A. J., concurred.